[Cite as *Gonzalez v. Rodriguez*, 2018-Ohio-2410.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Blanca Santos Gonzalez, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-136 |
| v. | : | (C.P.C. No. 16JU-0467) |
| Pedro Ovidio Rodriguez, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

### D E C I S I O N

### Rendered on June 21, 2018

**On brief:** *Advocates for Basic Legal Equality, Inc.,* and *Jessica A. Ramos,* for appellant. **Argued:** *Jessica A. Ramos.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

HORTON, J.

{¶ 1} Plaintiff-appellant, Blanca Santos Gonzalez, filed a complaint for allocation of custody in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, seeking "legal custody" of her minor child, E.S., and asking the trial court to make findings of fact to allow E.S. to petition the federal government for status as a Special Immigrant Juvenile under 8 U.S.C. 1101(a)(27)(j). She now appeals from the trial court's decision declining to make the requested findings. For the following reasons, we affirm.

{¶ 2} Santos Gonzalez filed a complaint for allocation of custody on January 11, 2016, asking the court for "legal custody" of E.S., who was born on May 1, 2001. She subsequently filed an amended complaint on May 23, 2016. Santos Gonzalez alleged that E.S. was her biological child, and that he had resided with her in Columbus since February 2015. Santos Gonzalez also alleged that E.S.'s biological father was Pedro Ovidio Rodriguez, who was in El Salvador, had never supported E.S., and had not been in contact

with him since 2005. She claimed that E.S.'s father had "abandoned and neglected the child within the meaning of O.R.C. § 3127.01(B)(1) and O.R.C. § 2151.03(A)(1)." (Jan. 11, 2016 Compl.) E.S. had come to the U.S. in January 2015 to escape the "extreme poverty and widespread gang violence" in El Salvador, and "to reunify with his mother." *Id.* In the prayer for relief, Santos Gonzalez asked the juvenile court to grant her legal custody of E.S. and to "[m]ake findings of fact necessary for [E.S.] to petition for Special Immigrant Juvenile Status." *Id.* Specifically, she asked for the juvenile court to make findings in accordance with the definition of a Special Immigrant Juvenile under 8 U.S.C. 1101(a)(27)(J). (Jan. 11, 2016 Compl.; May 23, 2016 Am. Comp.)

{¶ 3} At a hearing, the magistrate questioned Santos Gonzalez about E.S., her parenting history, and her financial circumstances. She testified that it had been eight years since E.S. had contact with his father and that E.S. had been living with her for the previous year and one-half. Santos Gonzalez's attorney then asked the juvenile court to make "two additional findings" not addressed by the questioning: "that reunification of the minor child with his father is not viable due to abandonment and that it is not in the child's best interest to return to El Salvador." (Aug. 31, 2016 Tr. at 11-12.)

{¶ 4} The magistrate filed a decision on September 14, 2016, stating findings of fact and conclusions of law. The magistrate found that E.S. had been born in El Salvador and that his putative father had left when he was four; that Santos Gonzalez had supported E.S. before his arrival in the U.S. and was currently supporting him; that Santos Gonzalez feared for E.S.'s safety if he returned to El Salvador; and that it was "in the best interest of the child to remain in the custody of the Mother." (Sept. 14, 2016 Decision at 3.) However, the magistrate stated that she was "unable" to make the other additional findings that Santos Gonzalez had requested. *Id.*

{¶ 5} Santos Gonzalez filed an objection to the magistrate's failure to make the additional findings. (Sept. 29, 2016 Objs. to Mag.'s Decision.) In a decision overruling the objection, the trial court stated that it was "unable to make the requested findings" under 8 U.S.C. 1101(a)(27)(J) because:

> The minor child in this case has not been declared dependent by a juvenile court, and he has never been committed to or placed under the custody of an agency or department of a State. The Court finds that the minor child is not abandoned, abused or neglected, as he is currently in the custody of his mother.

> Finally, while the Court may agree that it is in the minor child's best interest to live in the United States and go to school as opposed to being returned to El Salvador, the fact that the federal statute is cumulative precludes the Court from making the findings requested by Plaintiff.

(Jan. 20, 2017 Jgmt. Entry at 2.)

{¶ 6} Santos Gonzalez has appealed and asserts three assignments of error:

> [I.] The trial court erred as a matter of law by denying and dismissing Appellant's objections.

> [II.] The trial court erred as a matter of law in determining [that] the child had not been abandoned by his father.

> [III.] The trial court erred as a matter of law by denying Appellant an opportunity to address the objections at the Hearing.

{¶ 7} In the first assignment of error, Santos Gonzalez argues that the juvenile court erred by denying and dismissing her objection. She argues that the juvenile court failed to read 8 U.S.C. 1101(a)(27)(J) "in its entirety" when it failed to make the findings she had requested. (Appellant's brief at 6.)

{¶ 8} Special Immigrant Juvenile ("SIJ") status under 8 U.S.C. 1101(a)(27)(J) "provides certain alien minors with a special immigration classification that may lead to permanent residency." *Young Zheng v. Pogash*, 416 F.Supp.2d 550, 552 (S.D.Tex.2006). To qualify for SIJ status, the juvenile must submit a petition to the United States Citizen and Immigration Services ("USCIS") with a declaration from a juvenile court demonstrating that the juvenile meets the statutory definition. Under 8 U.S.C. 1101(a)(27)(J), a SIJ is defined as:

> [A]n immigrant who is present in the United States—

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status.

{¶ 9} The juvenile court's declaration must satisfy the first two prongs of 8 U.S.C. 1101(a)(27)(J) to constitute prima facie evidence of the juvenile's eligibility for SIJ classification. 8 C.F.R. 204.11(d); *Young Zheng* at 554.

{¶ 10} Santos Gonzalez argues that the trial court erred because it "truncated the statutory definition" by ignoring the provision for "an individual or entity appointed by a State or juvenile court located in the United States." (Appellant's brief at 8); 8 U.S.C. 1101(a)(27)(J)(i). Thus, she believes that trial court "erred by not reading the complete language of the statute." (Appellant's brief at 8.)

{¶ 11} Although the trial court did not expressly consider the statutory language quoted by Santos Gonzalez, it was not error to do so because the evidence does not demonstrate that E.S. met the definition under 8 U.S.C. 1101(a)(27)(J). The first prong contains two requirements. The first requirement is a showing of dependency or custody with or overseen by a state agency. This may be met if the juvenile has (1) "been declared dependent on a juvenile court located in the United States," (2) the juvenile has been "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States." Here, E.S. has not been declared dependent in a juvenile court. Nor did the trial court legally commit or place him under the custody of a state agency.

{¶ 12} Santos Gonzalez argues that the definition applies because the trial court's allocation of custody shows that E.S. was "placed under the custody of * * * an individual or entity appointed by a State or juvenile court located in the United States." 8 U.S.C. 1101(a)(27)(J)(i). But Santos Gonzalez was not an individual "appointed by a State or juvenile court." She came to the trial court and petitioned it for an allocation of custody. Her interpretation of the language of the statute suggests that a juvenile need only be in the custody of any "individual," but the plain language of the statute requires that an individual or entity be "appointed" by a juvenile court.

{¶ 13}   Even if the circumstances of E.S.'s custody had fulfilled the first requirement of 8 U.S.C. 1101(a)(27)(J)(i), the second requirement of that provision was not met. Evidence must show that the juvenile's "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. 1101(a)(27)(J)(i). Thus, a child who is reunified with a parent will not meet this definition. *See Boyron v. Lynch*, 604 F.Appx. 72, 74 (2d Cir.2015) (holding that child did not "demonstrate *prima facie* eligibility" under 8 U.S.C. 1101(a)(27)(J) where the state court order only granted the applicant's cousin a "voluntary conservatorship" and the applicant did not "demonstrate that reunification with his mother was not viable—indeed, [his] mother continued to live with him at his cousin's house in Connecticut"). Here, E.S. and his mother were reunified, a circumstance that the trial court recognized. Because neither requirement of 8 U.S.C. 1101(a)(27)(J)(i) was met, the trial court did not err by dismissing the objection to the magistrate's refusal to make the requested findings. Accordingly, the first assignment of error is overruled.

{¶ 14}   In the second assignment of error, Santos Gonzalez posits that the trial court erred by not determining that E.S.'s father had abandoned him under either the definition in R.C. 3127.01(B)(1) or 2151.011(C).

{¶ 15} Santos Gonzalez filed a complaint for an allocation of custody, which is governed by the standards of R.C. 3109.04. In particular, the custody determination is governed by "the best interest" of the child. R.C. 3109.04(B)(1). The trial court fulfilled its obligation to make a determination under this standard when it adopted the magistrate's decision stating that it was in the "best interest" of E.S. to designate Santos Gonzalez the residential parent and legal custodian, and noted that his putative father had "no contact with the child for eight years." (Sept. 14, 2016 Decision at 3.) The trial court did not err when it declined to expressly determine that the putative father had "abandoned" E.S. Furthermore, the definition of "abandoned" in R.C. 3127.01(B)(1) only applies to the Uniform Child Custody Jurisdiction and Enforcement Act codified in R.C. 3127.01 through 3127.53. R.C. 3127.01(B). In addition, the definition of an abandoned child under R.C. 2151.011(C) applies to the provisions of the juvenile code under Chapter 2151, such as abandonment leading to a determination of neglect under R.C. 2151.03. The trial court did not err in failing to apply these standards to a request for an allocation of custody under R.C. 3109.04. Accordingly, the second assignment of error is overruled.

{¶ 16} In her third assignment of error, Santos Gonzalez argues the trial court erred by failing to allow her an opportunity to address the merits of her objections at the hearing the trial court conducted on her objections. During the November 15, 2016 hearing, the trial court expressed some concern that Santos Gonzalez had not provided an affidavit adequately describing reasonable diligence to ascertain the putative father's whereabouts before resorting to service by publication. The trial court engaged in a discussion with Santos Gonzalez's counsel stating Santos Gonzalez could either withdraw her objections and let the order stand as is, or she could continue with her objections but the trial court would have to void the magistrate's order for lack of service. Counsel for Santos Gonzalez declined to withdraw the objections. Thus, the trial court concluded the hearing without hearing any arguments on the merits of the objections.

{¶ 17} However, when the trial court issued its judgment entry on January 20, 2017, the trial court did not void the magistrate's decision for lack of service but instead considered the merits of Santos Gonzalez's objections before denying and dismissing the objections. The trial court made no mention of any issue with service.

{¶ 18} Santos Gonzalez now asserts it was error for the trial court to rule on her objections without affording her a proper hearing. However, under Civ.R. 53(D)(4)(d), a trial court is not required to hold a hearing prior to ruling on a party's objections to a magistrate's decision; instead, a trial court has discretion to hold a hearing before ruling on the objections. Civ.R. 53(D)(4)(d); *Reed v. Turner*, 10th Dist. No. 14AP-400, 2014-Ohio-5109, ¶ 22; and *Losey v. Diersing*, 12th Dist. No. CA2012-06-048, 2013-Ohio-1108, ¶ 14. Santos Gonzalez has not demonstrated that the trial court abused its discretion when it ruled on her objections to the magistrate's decision without affording her a full hearing on the substance of her objections. Accordingly, the third assignment of error is overruled.

{¶ 19} Having overruled all three assignments of error, we affirm the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER JJ., concur.